DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JOHN HARRIS,              )

                                        )     CASE NO. 4:10 CV 2186

             Plaintiffs,      )

                                        )

             v.                    )     **<u>MEMORANDUM OPINION</u>**

                                          )

SGT. LASHLEY, *et al.*,      )

                                        )

             Defendants.     )

     *Pro se* plaintiff John Harris filed this action under 42 U.S.C. § 1983 against Ohio State Penitentiary ("OSP") Sgt. Lashley, OSP Quality Assurance Administrator for Medical Care Ms. C. Smith, former OSP Health Care Administrator Ms. Y. Thornton, OSP Physician Dr. Escobar, OSP Nurse A.J. Gerlick, OSP Rules Infraction Board ("RIB") Chairman Lt. Booth, current OSP Health Care Administrator Nurse Mary Lapushansky, Ohio Department of Rehabilitation and Correction Assistant Chief Inspector Mona Parks, OSP Institutional Inspector Mark Thomas, OSP Case Manager Robert Wolfe, OSP Unit Manager Laura Johnson, and OSP Deputy Warden of Special Services Betty McDonough.  In the Complaint, Plaintiff alleges his leg brace was kept from him in retaliation for filing prior grievances.[1]  He seeks monetary and injunctive relief.

### Background

     Mr. Harris's knee brace was confiscated by OSP staff on November 17, 2009.  He was placed in segregation for a rule violation, the possession of contraband, and his property was placed into storage.  Once in segregation, he asked for the return of his brace which was ordered

---

[1]  Plaintiff also alleges depravation of property and denial of adequate medical care.

(4:10-CV-2462)

for him by a physician. He was told that contraband, an allen wrench, had been found concealed in the brace and the conduct report would have to be resolved before a decision would be made on the return of the appliance. He was given a list of the contraband that had been found in his cell. While the wrench was on this list, he claims the knee brace was not considered a prohibited item.

A preliminary hearing on the conduct report was held on November 25, 2009. Lt. Booth examined the brace and concluded it had not been altered. He ordered the brace to be returned to Mr. Harris. Sgt. Lashley, however, did not comply with the order and destroyed the brace. Mr. Harris claims Sgt. Lashley did not like him because he complained to Lashley's boss about his conduct on prior occasions. He contends the brace was destroyed in retaliation for these prior complaints.

After his release from segregation, Mr. Harris made numerous attempts to get a new brace. He sent a kite to the OSP Institutional Inspector Mark Thomas asking for a brace. He was told to utilize the grievance process. He sent an Informal Complaint Resolution form to Ms. Johnson on December 12, 2009. She told him to sign up for sick call. He sent a similar Informal Complaint to the Quality Assurance Officer, Ms. Smith, who also advised him to sign up for sick call. Mr. Harris finally sought an appointment with Dr. Escobar in January 2010. He claims Dr. Escobar wrote a second order for the brace.

When he had not received a new brace by January 20, 2010, Mr. Harris made further inquiries. He sent an Informal Complaint to Ms. Smith who indicated she would forward it to the Health Care Administrator, Ms. Thornton. Mr. Harris also sent an Informal Complaint to Ms

-2-

(4:10-CV-2462)

Thornton asking for the brace.  She told him she would look into it.  Two days after receiving her

reply, he sent copies of all of his grievances to his Case Manager, Robert Wolfe.  Later, when

Mr. Harris attempted to get copies of the grievances, Mr. Wolfe could not remember receiving

the papers and could not produce the documents.  The Warden was able to get those copies for

him.  Mr. Harris sent an Informal Complaint to the Deputy Warden of Special Services, Betty

McDonough.  She, in turn, spoke to Dr. Escobar, who reported he was examining Mr. Harris's

need for the brace.  In May 2010, Mr. Harris sent an Informal Complaint to the new Health Care

Administrator, Mary Lapushansky.  She indicated she would speak with Dr. Escobar.  She also

suggested to Mr. Harris that he purchase a knee sleeve through the prison's commissary.  He

states he is indigent and cannot afford to make the purchase.

Mr. Harris eventually appealed his grievances to the ODRC Chief Inspector.  Mona Parks

denied his grievance, explaining that his use of the brace was only approved until his injury

healed.  Mr. Harris disagrees, contending he had an indefinite order for a brace.  He claims Dr.

Escobar will not approve additional testing or an MRI to confirm his continued need for the

brace.  He claims the Defendants retaliated against him, conspired to retaliate against him, denied

him due process, and were deliberately indifferent to his serious medical needs.

**Analysis**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364,

365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is

required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a

(4:10-CV-2462)

claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, the Court determines that Mr. Harris's retaliation claims against Ms. Smith, Ms. Thornton, Dr. Escobar, A.J. Gerlick, Lt. Booth, Mary Lapushansky, Mona Parks, Mark Thomas, Robert Wolfe, Laura Johnson, and Betty McDonough are dismissed pursuant to §1915(e).  His conspiracy claims and his due process claims are dismissed against all Defendants.  His Eighth Amendment claims against Ms. Smith, Ms. Thornton, Mr. Gerlick, Lt. Booth, Ms. Lapushansky, Ms. Parks, Mr. Thomas, Mr. Wolfe, Ms. Johnson, and Ms. McDonough are also dismissed pursuant to § 1915(e).

## I. Parties

As an initial matter, Mr. Harris cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  Mr. Harris claims Mr. Gerlock was present when Dr. Escobar issued a second order for the knee brace.  He does not allege he engaged in any activity with regard to confiscating or failing to deliver the brace.

---

[2]     An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

(4:10-CV-2462)

Similarly, Lt. Booth ordered the brace returned.  Mr. Harris does not allege that he participated in

conduct which deprived him of the knee brace.   The Complaint simply contains no facts which

reasonably associate these Defendants to any of the claims set forth by Plaintiff.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct.

1937, 1949 (2009). Rule 8 does not require the Plaintiff to provide detailed factual allegations,

but it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Id.*  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of

action will not meet this pleading standard  *Id.*  The claims against Mr. Gerlock and Lt. Booth do

not meet the pleading standard of Rule 8.

## II.  Retaliation

Mr. Harris first claims the Defendants retaliated against him for filing grievances against

Sgt. Lashley.  To state a prima facie case for retaliation, Mr. Harris must establish: 1) he engaged

in protected conduct; 2) an adverse action was taken against him that would deter a person of

ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection

exists between the first two elements.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

He has not satisfied each of these criteria with regard to each Defendant.

An inmate has a First Amendment right to file grievances against prison officials.  *See*

*Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).  To state a constitutional claim, however, Mr.

Harris must not only show he exercised this First Amendment right, but also must demonstrate

that adverse actions were taken against him which were motivated, at least in part by the

-5-

(4:10-CV-2462)

grievances he filed. *Thaddeus-X*, 175 F.3d at 394.  Mr. Harris alleges he complained about Sgt. Lashley to his boss, and Sgt. Lashley in return destroyed his leg brace against orders.  These allegations arguably set forth a retaliation claim against Sgt. Lashley.  Mr. Harris, however, tries to extend this motivation to the actions of all of the other Defendants.  He claims Ms. Smith, Ms. Thornton, Mary Lapushansky, Mona Parks, Mark Thomas, Robert Wolfe, Laura Johnson, and Betty McDonough did not respond to his grievances in a way that provided real assistance to him.  There are no facts set forth in the Complaint which reasonably suggest these actions were based upon an intent to retaliate against plaintiff.  Similarly, he claims Dr. Escobar issued a second order for the leg brace, but did not vigorously work to help him obtain the appliance.  There is no reasonable indication that this behavior was motivated by grievances Mr. Harris filed against Sgt. Lashley.  Mr. Harris's retaliation claim shall proceed solely against Sgt. Lashley.  It is dismissed against all other Defendants.

### III.  Conspiracy to Retaliate

Mr. Harris also claims the Defendants conspired to retaliate against him.  A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  To state a claim, Mr. Harris must show that there was a single plan, that two or more co-conspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the Plaintiff.  *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985).  Conspiracy claims must be pled with some degree of specificity.  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).  Vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.  *Id*.  As stated above, Mr.

(4:10-CV-2462)

Harris's only viable claim for retaliation is against Sgt. Lashley.  There are no allegations suggesting any other Defendant was engaged in this activity.  A conspiracy claim cannot be based on the actions of one person.

## IV.  Due Process

Mr. Harris indicates he is asserting claims under the Fourteenth Amendment.  He does not explain the basis of this claim.  Because the substance of his Complaint is based on the loss of his leg brace, the Court liberally construes this as a claim for deprivation of property without due process.

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them."  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It does not prohibit every deprivation by the state of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983.  *Id.*

### A.  Procedural Due Process

As an initial matter, it is not clear whether Mr. Harris intended to assert a claim for procedural due process, substantive due process, or both.  To the extent he intended to assert a procedural due process claim, it is subject to dismissal.  Mr. Harris must plead and prove either that he was deprived of liberty or property as a result of an established state procedure that itself

-7-

(4:10-CV-2462)

violates due process rights; or that the defendants deprived him of liberty or property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983). Mr. Harris is not challenging an established state procedure, statute or local ordinance. Instead, he is asserting he was deprived of his leg brace due to unauthorized acts of the Defendants.

To state a procedural due process claim based upon alleged unauthorized acts of the defendants, Mr. Harris must also plead and prove that state remedies for redressing the wrong are inadequate. *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064. A remedy is available in the Ohio Court of Claims. *See Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir.1989). He has not claimed the state remedy was inadequate. Mr. Harris therefore has not stated a claim for denial of procedural due process.

### B. **Substantive Due Process**

To the extent Mr. Harris intended to assert a substantive due process claim, it too is subject to dismissal. Under the doctrine of substantive due process, various portions of the Bill of Rights have been incorporated into the Fourteenth Amendment's limits on the power of the states as being "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). Due process claims of this nature involve official acts which cause a deprivation of a substantive right specified in the Constitution or a federal statute. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v.*

-8-

(4:10-CV-2462)

*Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided.  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a state agent.  *Id.* at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id.*  Mr. Harris not assert a deprivation of another right specified in the Constitution and does not allege conduct so severe that it shocks the conscience.  He fails to set forth facts to assert a substantive due process claim.

## V.  Eighth Amendment

Finally, Mr. Harris asserts claims for a violation of the Eighth Amendment.  Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id.*  Seriousness is measured in response to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1,8 (1992).  Routine discomforts of prison life do not suffice.  *Id.*  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9.  Plaintiff must also establish a subjective element showing the prison officials acted with

(4:10-CV-2462)

a sufficiently culpable state of mind.  *Id.*  Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence.  *Id*.  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

While Mr. Harris may have stated an arguable claim for relief against Sgt. Lashley and Dr. Escobar, the same cannot be said for his allegations against the other Defendants.  Those claims are based on the responses the Defendants gave to Mr. Harris's Informal Complaints and Grievance forms.  Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983.  *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). The denial of the grievance is not the same as the denial of a request to receive medical care.  *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (June 7, 2001); *see also Shehee*, 199 F.3d at 300.  There are no allegations against Ms. Smith, Ms. Thornton, Mr. Gerlick, Lt. Booth, Ms. Lapushansky, Ms. Parks, Mr. Thomas, Mr. Wolfe, Ms. Johnson, or Ms. McDonough which suggest they participated in the decision to destroy or deny Mr. Harris's knee brace.

## Conclusion

For all the foregoing reasons, Mr. Harris's retaliation claims against Ms. Smith, Ms. Thornton, Dr. Escobar, A.J. Gerlick, Lt. Booth, Mary Lapushansky, Mona Parks, Mark Thomas, Robert Wolfe, Laura Johnson, and Betty McDonough are dismissed pursuant to 28 U.S.C. §1915(e).  His conspiracy claims and his due process claims are dismissed against all Defendants

(4:10-CV-2462)

pursuant to §1915(e).  His Eighth Amendment claims against Ms. Smith, Ms. Thornton, Mr. Gerlick, Lt. Booth, Ms. Lapushansky, Ms. Parks, Mr. Thomas, Mr. Wolfe, Ms. Johnson, and Ms. McDonough are also dismissed pursuant to § 1915(e).  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]  This action shall proceed solely on Plaintiff's retaliation claim against Sgt. Lashley, and his Eighth Amendment claim against Sgt. Lashley and Dr. Escobar.  The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants.

      IT IS SO ORDERED.

 January 14, 2011                                                    *s/ David D. Dowd, Jr.*
Date                                                   David D. Dowd, Jr.
                                                    U.S. District Judge

---

[3]      28 U.S.C. § 1915(a)(3) provides, in pertinent part:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.